ULLCUANY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SCOTT SWEENEY,

Petitioner,

-v-

TIMOTHY LAFFIN, *Superintendent,*
*Walkill C.F., Walkill, N.Y.,*

Respondent.[1]

No. 12-CV-6483 (KMK) (LMS)

ORDER ADOPTING REPORT &
RECOMMENDATION

KENNETH M. KARAS, District Judge:

Petitioner Scott Sweeney ("Petitioner"), proceeding pro se, files this Amended Petition

for a Writ of Habeas Corpus (the "Amended Petition") pursuant to 28 U.S.C. § 2254, challenging

his conviction for Burglary in the First Degree, in violation of N.Y. Penal Law § 140.30,

Attempted Assault in the First Degree, in violation of N.Y. Penal Law §§ 110.00 and 120.10,

Criminal Mischief in the Third Degree, in violation of N.Y. Penal Law § 145.05, and Criminal

Possession of a Weapon in the Fourth Degree, in violation of N.Y. Penal Law § 265.01. (*See*

Am. Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Am.

Pet.") ¶ 5 (Dkt. No. 14); Resp't's Mem. of Law in Opp'n to the Pet. for a Writ of Habeas Corpus

("Resp't's Mem.") 1 (Dkt. No. 20).)

The case was referred to Magistrate Judge Lisa Margaret Smith, who issued a Report and

Recommendation (the "R&R"), recommending that the Court deny the Petition. (*See* Report &

---

[1] At the time the Initial Petition was filed in 2012, David Unger was the Superintendent
of Wyoming Correctional Facility, where Petitioner was incarcerated at the time. Upon the filing
of the Amended Petition in 2014, Unger was replaced as Respondent with Timothy Laffin,
Superintendent at Walkill Correctional Facility, where Petitioner was incarcerated at the time of
the amended filing.

Recommendation ("R&R") 20 (Dkt. No. 37).) Petitioner subsequently filed timely objections to the R&R (the "Objections"), which the Court has considered. For the reasons stated herein, the Court adopts the R&R in its entirety and denies Petitioner's request for habeas relief.

## I. Background

The factual and procedural background of this case is set forth in Judge Smith's R&R and the Court assumes the Parties' familiarity therewith. (*See* R&R 2–5.) The Court nevertheless summarizes the facts relevant to this Order.

In the late afternoon of May 22, 2008, Petitioner went to the residence of his sister, Shea Pinson ("Pinson"), who previously had lent Petitioner approximately $30,000 over the course of the preceding three years. (*See* Tr. 34–36.)[2] Pinson heard a loud banging at her front door and then Petitioner entered the premises. (*See id.* at 36–37, 42.) Petitioner blamed Pinson for not helping him finish college, not helping him stabilize his diabetes, and generally for his difficult life. (*See id.* at 39.) In response, Pinson attempted to shut the front door, but Petitioner pushed back, causing Pinson to fall. (*See id.* at 42.) Petitioner held an ax over Pinson's head, which she was able to grab, thus leading to a struggle. (*See id.* at 42–44.) Pinson's teenage son called the police, who soon thereafter arrived. (*See id.* at 44.) Pinson's front door was damaged during the incident and had to be repaired. (*See id.* at 52–54.)

Petitioner was indicted by a Westchester County grand jury on August 11, 2008 and charged with Burglary in the First Degree, in violation of N.Y. Penal Law § 140.30, Attempted Assault in the First Degree, in violation of N.Y. Penal Law §§ 110.00 and 120.10, Criminal Mischief in the Third Degree, in violation of N.Y. Penal Law § 145.05, Menacing in the Second Degree, in violation of N.Y. Penal Law § 120.14, and Criminal Possession of a Weapon in the

---

[2] Citations to "Tr." refer to the transcript of Petitioner's trial held on January 14, 2009.

Fourth Degree, in violation of N.Y. Penal Law § 265.01. (*See* R&R 3.) The Menacing charge was dropped by the prosecution and on Petitioner's consent. (*See id.* at 3 n.5.)

On April 9, 2009, judgment was rendered in the Westchester County Supreme Court, convicting Petitioner, after a jury trial, of all the remaining charges and sentencing Petitioner to two determinate prison terms of nine years to be followed by five years post-release supervision for the burglary and attempted assault convictions, an indeterminate prison term of one and one-third to four years for the criminal mischief conviction, and a one-year prison term for the weapons possession conviction. (*See id.*) All sentences ran concurrently. (*See id.*)

On April 21, 2009, Petitioner, then represented by Janet Gandolfo, Esq., filed a direct appeal in the Appellate Division raising two claims: (1) there was insufficient evidence to establish Petitioner's guilt beyond a reasonable doubt; and (2) the sentence imposed by the trial court was excessive. (*See id.* at 3–4.) On November 9, 2010, Petitioner filed a supplemental pro se brief in the Appellate Division, raising five claims: (1) there was insufficient evidence to establish Petitioner's guilt beyond a reasonable doubt; (2) the jury instructions unlawfully shifted the burden of proof to Petitioner; (3) the jury verdict was not supported by the weight of the evidence; (4) Petitioner received ineffective assistance of counsel; and (5) Petitioner's arrest was illegal and the evidence used against him was illegally obtained. (*See id.* at 4.) On May 17, 2011, the Appellate Division affirmed Petitioner's conviction. (*See id.*) On August 16, 2011, the New York State Court of Appeals denied Petitioner's application for leave to appeal. (*See id.*)

On August 23, 2012, Petitioner filed his initial petition (the "Initial Petition"), requesting the Court stay his Initial Petition until Petitioner could file an application for a writ of error coram nobis to exhaust a claim of ineffective assistance of counsel. (*See* Dkt. No. 2.) Petitioner

3

filed his corum nobis application on October 31, 2012. (*See* R&R 4.) The Court subsequently granted Petitioner's motion to stay on January 8, 2013. (*See* Dkt. No. 11.)

On May 29, 2013, the Appellate Division denied Petitioner's coram nobis application, and on December 19, 2013, the New York State Court of Appeals denied Petitioner's application for leave to appeal. (*See* R&R 4.) On March 20, 2014, Petitioner filed the Amended Petition. (*See* Am. Pet.) The Amended Petition raised three grounds for relief: (1) the evidence introduced at trial was legally insufficient; (2) Petitioner was deprived of due process as a result of the jury instructions impermissibly shifting the burden of proof to the defense; and (3) Petitioner was deprived of effective assistance of counsel at the pre-trial, trial, and appellate stages. (*See generally id.*) Respondent filed his opposition to the Amended Petition on June 19, 2014, (*see* Resp't's Mem.), and on August 25, 2014, Petitioner filed his reply, (*see* Dkt. No. 27).

Judge Smith issued the R&R on August 8, 2016, recommending that this Court deny Petitioner's request for relief and dismiss the Amended Petition in its entirety. (*See* R&R 20.) Petitioner requested an eight-month extension of time to submit his Objections to the R&R, which the Court denied on August 25, 2016. (*See* Dkt. No. 38.) Petitioner was given 30 days to file his Objections. (*See id.*) Petitioner subsequently filed his Objections on September 22, 2016. (*See* Pet'r's Objs. to Proposed Findings of Fact and Recommendation ("Pet'r's Objs.") (Dkt. No. 39).)

## II. Discussion

### A. Applicable Law

#### 1. Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

4

magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)-(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

"A district court evaluating a magistrate judge's report may adopt those portions of the report [and recommendation] to which no specific, written objection is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (internal quotation marks omitted), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). In contrast, where a party timely submits objections to a report and recommendation, as Petitioner has done here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "When a [petitioner] simply rehashes the same arguments set forth in [his] original petition, however, such objections do not suffice to invoke de novo review of the [r]eport." *Aponte v. Cunningham*, No. 08-CV-6748, 2011 WL 1432037, at *1 (S.D.N.Y. Apr. 11, 2011) (italics omitted); *see also Hall v. Herbert*, No. 02-CV-2300, 2004 WL 287115, at *1 (S.D.N.Y. Feb. 11, 2004) ("[T]o the extent that a party simply reiterates his original arguments, the [c]ourt reviews the report and recommendation only for clear error.").

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in

5

the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam).

## 2. Habeas Corpus

### a. Standard of Review

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "[t]he writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even

6

if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 563 U.S. 170, 202–03 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*—we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same). Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

7

## b. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Accordingly, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). "First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds, Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same). This requirement is satisfied if the claim is

8

presented in a way that is "likely to alert the court to the claim's federal nature," *Daye*, 696 F.2d at 192, and the state courts are "apprised of both the factual and the legal premises of the claim [the petitioner] asserts in federal court," *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (alteration in original) (internal quotation marks omitted); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same). In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement. *Daye*, 696 F.2d at 194. However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted). Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (internal quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein*, 667 F.2d at 282; *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). If the petitioner fails to exhaust his or her state remedies through this entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods. *See Klein*, 667 F.2d at 282–83; *West v. Sheahan*, No. 12-CV-8270, 2014 WL 5088101, at *3 (S.D.N.Y. Sept. 18, 2014); *Sparks v. Burge*, No. 06-CV-6965, 2012 WL 4479250, at *4

9

(S.D.N.Y. Sept. 28, 2012); *Torres v. McGrath*, 407 F. Supp. 2d 551, 557 (S.D.N.Y. 2006); *Rivera v. Conway*, 350 F. Supp. 2d 536, 544 (S.D.N.Y. 2004). For example, in New York a defendant may challenge the conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

In addition, New York permits only one application for direct review. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.20(a)(2); *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law] . . . ."). "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." *See Sparks*, 2012 WL 4479250, at *4. Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the unexhausted claims are therefore deemed exhausted, but procedurally barred. *See Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and internal quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the reality that deeming an unpresented claim to be exhausted is "cold comfort"). A

10

dismissal of a habeas petition on such grounds is a "disposition . . . on the merits." *Id.* "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default," or a showing that the petitioner "is actually innocent of the underlying offense . . . .").

### B. Application

Petitioner's Objections are difficult to follow, and, for the most part, repeat the same arguments advanced in his Amended Petition, without substantively addressing, or referring to, Judge Smith's recommendations. The Court construes Petitioner's principal objections to be that (1) Petitioner's pre-trial, trial, and appellate counsel "conce[ded] [certain arguments] through [w]aiver and [f]orfeit," failed to "promote [his] rights," and "neglect[ed] to [i]nvestigate/[l]ocate a suitable . . . [e]xpert [w]itness"; and (2) Petitioner has a colorable claim of "actual innocence," as "the only thing which is [s]ubstantiating the [e]lements of the [c]harges[] is . . . Pinson['s] [t]estimony." (Pet'r's Objs. 2–3, 6, 8–9 (emphasis and internal quotation marks omitted).) The Court addresses each argument below.

#### 1. Ineffective Assistance of Counsel

Petitioner "specifically objects to the fact that . . . Magistrate Judge[] [Smith's] Report and Recommendation" "depend[s] on . . . the Appellate Division['s] . . . Direct Appeal [d]ecision," with respect to his claims for legal insufficiency, the *Sandstrom* charge, the failure to produce an expert witness, and ineffective assistance of counsel. (*Id.* at 5 (emphasis and internal

11

quotation marks omitted); *see also id.* at 6 ("Petitioner specifically objects to the oblivious presumption of the absolute [l]egitimacy of the Appellate Division . . . decision, when it is deriv[ed] from an appallingly insubstantial effort at [c]onstitutionally mandated [a]ppellate [r]epresentation.").) Petitioner effectively contends that, with respect to each of the above-identified issues, "had the same material been handled by a competently trained advocate, one would have to admit [to] the potential of a vastly superior outcome[] to the present one" and that "Petitioner's [Fifth, Sixth, and Fourteenth Amendment] [r]ights were adversely impinged by [c]ounsel's deficient contribution to his active [d]efen[s]e." (*Id.* at 5.)

As Judge Smith noted in her R&R, in *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the standard for assessing claims of ineffective assistance of counsel. (*See* R&R 13.) Under *Strickland*, counsel's errors must be shown to have been "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. In addition, Petitioner must show that he was prejudiced by the deficient performance. *See id.*

As to the legal sufficiency claim, as Judge Smith correctly notes, this issue was first raised in Petitioner's direct appeal and again in his Amended Petition. (*See* R&R 10.) The Appellate Division found that the contemporaneous objection rule barred Petitioner's claim. (*See id.*) Petitioner raises no objection to Judge Smith's finding that he "failed to allege cause for the default, let alone establish cause and prejudice arising therefrom, or that failure to review his claim [would] result in a fundamental miscarriage of justice." (*Id.*) The Court agrees that this claim is procedurally barred and that, in light of Petitioner raising the issue himself on direct appeal, there is no indication that appellate counsel's efforts to do so would have been successful.

12

With respect to the "*Sandstrom* [c]harge," (Pet'r's Objs. 2 (italics added)), Petitioner also raised this issue in his pro se supplemental brief on direct appeal, (*see* R&R 11). The Appellate Division rejected the argument on state procedural grounds, and Judge Smith found such claim procedurally barred. (*Id.*) Petitioner, again, identifies no objection to Judge Smith's finding, and indeed, notes that appellate "[c]ounsel made a reasonable [s]trategic [c]hoice not to present" an ineffective assistance claim in connection with trial counsel's failure to raise a claim regarding the jury charge. (Pet'r's Objs. 3 (emphasis and internal quotation marks omitted).)

As to the failure to procure a "[f]orensic [t]ool-[m]ark [e]xpert," Petitioner describes this as "another opportunity[] foregone by [c]ounsel." (*Id.* at 7.) Petitioner offers no response to Judge Smith's finding that "[i]t is entirely speculative . . . that an expert witness would have been able to testify that Petitioner's ax could not have made the dents in Pinson's door" and that he "failed to offer . . . any . . . evidence in support of his bare assertion that such testimony may have supported his defense." (R&R 17.) In the absence of any evidence as to how a tool-mark expert could have altered the outcome of Petitioner's trial, the Court adopts Judge Smith's findings with respect to the decision not to retain an expert witness. *See Bennett v. United States*, No. 03-CV-1852, 2009 WL 3614613, at *12 (S.D.N.Y. Nov. 3, 2009) (rejecting the petitioner's argument that effective counsel would have changed the result of his trial as "sheer speculation"), *aff'd*, 663 F.3d 71 (2d Cir. 2009).

Each of the claims Petitioner now raises with regard to ineffective assistance of counsel is identical to those raised either "as part of his direct appeal" in his pro se supplemental brief or in the Amended Petition. (R&R 19.) These claims were rejected by the Appellate Division and Judge Smith as meritless, and the Court agrees. To the extent Petitioner again contends that his appellate counsel should have raised such claims in connection with his pre-trial and trial

13

representation, Judge Smith found that "[s]ince Petitioner himself raised these assertions as part of his direct appeal and the Appellate Division affirmed his conviction, there is no reasonable possibility that if appellate counsel had raised [them], the result of Petitioner's appeal would have been different." (*Id.*) For the foregoing reasons, the Court rejects Petitioner's objections regarding ineffective assistance of counsel.[3]

### 2. Actual Innocence

Petitioner contends that "the only thing . . . [s]ubstantiating the [e]lements of the [c]harges[] is . . . Pinson['s] [t]estimony" and "[g]iven [c]ounsel and [a] [h]earing for [n]ew [e]vidence[,] [he is] certain sufficient [d]oubt could be cast upon that [e]vidence." (Pet'r's Objs. 9 (emphasis and internal quotation marks omitted).)

In "extraordinary case[s]," a court may review a procedurally defaulted habeas claim in order to avoid a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see also Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (explaining that in "extremely rare" cases, "a petitioner may use his claim of actual innocence as a 'gateway,' or a means of excusing his procedural default, that enables him to obtain review of his constitutional challenges to his conviction" (some internal quotation marks omitted)). However, this exception is expressly limited to situations where a petitioner presents a claim of actual innocence. *See Schlup*, 513 U.S. at 321 (noting that this exception is "explicitly tied . . . to the petitioner's innocence"). "[A] claim of actual innocence must be both credible and compelling. For the claim to be credible, it must be supported by new reliable evidence—whether it be exculpatory scientific evidence,

---

[3] To the extent Petitioner "specifically objects to the complete absence of any and all reference to Petitioner's 'Collateral Attack,'"—his writ of error coram nobis—this argument is belied by the record. (Pet'r's Objs. 6.) The R&R acknowledges that Petitioner filed a pro se application for a writ of error coram nobis, (*see* R&R 4), and identifies that his ineffective assistance of counsel arguments were raised in the coram nobis application, (*see id.* at 12).

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (citations and internal quotation marks omitted). "For the claim to be compelling, the petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . ." *Id.* (internal quotation marks omitted).

Despite the fact that "the definition of 'new' evidence remains an open question in th[e] [Second] Circuit," *Tuitt v. Martuscello*, No. 12-CV-1003, 2013 WL 5508385, at *15 n.16 (S.D.N.Y. Oct. 3, 2013); *see also Bowman v. Racette*, No. 12-CV-4153, 2015 WL 1780159, at *3 (S.D.N.Y. Apr. 20, 2015) ("[T]he definition of 'new' evidence under the *Schlup* standard appears to be an open question in this Circuit."), Petitioner offers no indication of what "new evidence" he would offer to make his claim "credible" under *Rivas*. Attached to Petitioner's Objections are (1) the Decision & Order of the Appellate Division, issued May 17, 2011; (2) a visitors log showing visits from certain of Petitioner's counsel; and (3) a single page of text written by Petitioner, appearing to describe some of the circumstances surrounding his arrest. (*See* Pet'r's Objs. at unnumbered 10–13.) None of these documents appears to reflect "new evidence" supporting a claim of actual innocence.[4]

Insofar as Petitioner advances a freestanding actual innocence claim as a ground for habeas relief, the Court notes that the Supreme Court "has never expressly held that a petitioner may qualify for habeas relief based solely on a showing of actual innocence." *Rivas*, 687 F.3d at

---

[4] To the extent Petitioner attaches the visitors log to indicate that trial counsel was ineffective because counsel waited until the business day before trial started to visit Petitioner, the Court notes that this argument was raised in the Amended Petition and therefore is not new evidence. (*See* Am. Pet. 4–5 ("The County Jail Visitor Log ([c]opy included with [s]upplemental [p]ro-se [b]rief[]) will show first [t]rial [c]ounsel 'Interview' happened the Friday, right before [j]ury [s]election began that Monday . . . .").)

540 & n.34; *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). However, even if a freestanding actual innocence claim could warrant habeas relief, Petitioner has failed to make such a showing because "the threshold for any hypothetical freestanding innocence claim [i]s 'extraordinarily high,'" and such a showing "requires more convincing proof of innocence" than the showing of innocence necessary to satisfy *Schlup. House v. Bell*, 547 U.S. 518, 555 (2006) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). Because Petitioner fails to satisfy the *Schulp* standard, he cannot satisfy the more stringent requirements for any freestanding innocence claim. Moreover, Petitioner concedes that this claim "technically . . . has not . . . been raised, p[u]rsued, or indeed, preserved." (Pet'r's Objs. 8.) Accordingly, the Court rejects Petitioner's claim of actual innocence.

## III. Conclusion

For the reasons stated above, the Court adopts, after a de novo review, Judge Smith's R&R. Petitioner's writ of habeas corpus is thus dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010)

16

(citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of Court is respectfully directed to enter a judgment in favor of Respondent, send a copy of this Order to Petitioner at the address listed on the docket, and to close the case.

SO ORDERED.

DATED: September 28, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE